WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wendy Jo Leach,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-16-08227-PCT-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Wendy Jo Leach, which challenges the Social Security Administration's decision to deny disability benefits and supplemental security income. (Doc. 1.) For the reasons set forth below, this Court affirms the findings of the ALJ.

**BACKGROUND**

On September 18, 2012, Ms. Leach protectively filed an application for disability benefits as well as an application for supplemental security income. (Tr. 24.) Both applications alleged a disability onset date of October 1, 2009. (*Id.*) Both claims were initially denied on March 4, 2013, and they were denied again upon reconsideration on September 27, 2013. (*Id.*) Ms. Leach then filed a written request for a hearing and she testified before Administrative Law Judge ("ALJ") Randolph E. Schum. (*Id.*) On March 19, 2015, the ALJ issued a decision finding Ms. Leach not disabled. (Tr. 39.)

In evaluating whether Ms. Leach was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (Tr. 25–26.) At step one, the ALJ found that Ms. Leach had not engaged in substantial gainful activity since October 1, 2009, the alleged onset date. (Tr. 26.) At step two, the ALJ determined that Ms. Leach suffered from the following severe impairments: pseudo seizures, obesity, depression, and anxiety.[2] (Tr. 26.) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (Tr. 28.)

At that point, the ALJ reached step four and made a determination of Ms. Leach's residual functional capacity ("RFC"),[3] concluding that Ms. Leach could "perform light work "lifting and carrying 20 pounds occasionally and [10] pounds frequently" and that Ms. Leach "is able to understand, remember, and carry out simple instructions and non-

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

[2] Ms. Leach initially alleged that she suffered from physical as well as mental impairments. However, none of her alleged physical impairments, including headaches and hyperthyroidism, were considered severe. (Tr. 27.) At her hearing, Ms. Leach alluded to some physical impairments as well. (Tr. 68.) However, she limits her appeal to the issue of whether she is disabled by her mental impairments. (Doc. 13.)

[3] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96–8p (July 2, 1996).

detailed tasks," although she "should not work in a setting which includes constant and/or regular contact with the general public" or "more than infrequent handling of customer complaints." (Tr. 30.) In making these findings, the ALJ relied upon the opinion of examining physician Dr. Mather, "specifically the assessment that there was evidence of malingering." (Tr. 35.) The ALJ gave no weight to the other examining physician, Dr. Geary, or the nurse practitioner, Mrs. Naomi Brown. (Tr. 36.)

The Appeals Council declined to review the decision. (Tr. 1–4.) Ms. Leach filed the complaint underlying this action on October 4, 2016, seeking this Court's review of the ALJ's denial of benefits. (Doc. 1.) The matter is now fully briefed before this Court. (Docs. 13, 14.)

## ANALYSIS

### I. Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

### A. Dr. Geary

"When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict." *Batson*, 359 F.3d at 1195 (9th Cir. 2004). To reject the testimony of Dr. Geary, a contradicted examining physician, an "ALJ must provide specific, legitimate reasons based on substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ noted that Dr. Geary's examination conflicted with another examining psychologist, Dr. Mather. (Tr. 35−36.) Dr. Mather performed a series of various tests to determine if Ms. Leach was malingering, and while he did not find "definitive evidence" of malingering, he ultimately determined that "[h]er performance across tests of effort/malingering calls into question this Claimant's performance across all neuropsychological measures administered." (Tr. 451.) Dr. Geary had a different assessment of her performance when he examined her not long before the hearing, finding that "Ms. Leach extended proper and genuine effort at all times" during her exam. (Tr. 1763.) The ALJ ultimately determined that the findings of Dr. Geary should be discounted in favor of Dr. Mather's because Dr. Geary based his findings on inaccurate information regarding Ms. Leach's substance abuse and Dr. Geary failed to account for Ms. Leach's prolonged use of Ativan. (Tr. 36.)

The ALJ properly discounted the medical testimony of Dr. Geary because his opinion was improperly influenced by misinformation. (Tr. 36.) Ms. Leach told Dr. Geary that "she had quit illegal drugs altogether in 2003, but had one relapse on methamphetamine approximately six months ago." (Tr. 1762.) This is not what she told her nurse practitioner, who continued to diagnose her with a polysubstance abuse problem, or what she reported during her own testimony before the ALJ. (Tr. 36, 63, 1739.) An ALJ may properly discount a physician's opinion where it is founded on an "erroneous belief" or "mistaken impression." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Therefore, the ALJ did not err in discrediting Dr. Geary's opinion

because it was premised upon Ms. Leach's inaccurate and inconsistent self-reporting of her substance abuse.

The ALJ also noted that Dr. Geary did not account for Ms. Leach's "chronic use of Ativan" in his medical opinion. (Tr. 36.) Ms. Leach objects to this because Dr. Geary did quote Ms. Leach as recounting taking some amount of Lorazepam, the generic version of Ativan. (Tr. 1758.) Although Dr. Geary mentions that Ms. Leach remembers using Lorazepam at one point in her treatment history, Dr. Geary failed to account for her *chronic* use of the drug in his medical opinion. (Tr. 36.) This interpretation is supported by the record, as Dr. Geary mentions Ms. Leach's use of Lorazepam once in his eleven page report, and does not appear to integrate its possible effects into his opinion. (Tr. 1755–1763.) An ALJ's finding of facts is given great deference, as "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019. Therefore, Ms. Leach's contention that the ALJ erred in discounting Dr. Geary's opinion is rejected.

### B. Nurse Practitioner Brown

Nurse practitioners are categorized as "other sources" under the regulations.[4] *See* 20 C.F.R. §404.1513(d)(1) (explicitly listing nurse practitioners as an "other source" under the regulations). Nurse practitioners are therefore not entitled to the same deference as acceptable treating physicians under the regulations. *See Molina*, 674 F.3d at 1111. Their opinions may be discounted "if the ALJ gives reasons germane to each witness for doing so." *Id.* (internal quotation and citation omitted).

The ALJ rejected Nurse Practitioner Brown's opinion because it was contradicted by Dr. Mather, an acceptable medical source. This is a valid reason to discount her opinion. *See Molina*, 674 F.3d at 1112 (affirming an ALJ's opinion to discount an "other

---

[4] Ms. Leach correctly notes that since the time of the final decision in her case, the regulations were updated to include nurse practitioners as acceptable medical sources. However, at the time of her decision, the regulations still qualified nurse practitioners as other sources, and thus her case will be governed by the prior regulation.

- 5 -

source" in favor of a physician). Therefore, the ALJ did not err in discounting her opinion.

### C. Credibility

Once a claimant establishes that objective medical evidence illustrates an impairment that could reasonably cause the symptoms alleged, an ALJ may "reject her testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040–41 (9th Cir. 2003); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (internal citations and quotation omitted) ("If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be clear and convincing.").

The ALJ in this case noted that Dr. Mather opined that Ms. Leach's performance on memory malingering testing indicated that there was a "higher than average likelihood that the claimant was either exaggerating her memory difficulties or malingering." (Tr. 34, 457.) The ALJ also noted that while Dr. Mather did not find this test to be sufficient to definitively diagnose Ms. Leach as a malingerer, Dr. Mather did advise that "interpretation of [Ms. Leach's] psychometric outcomes needed to be made with extreme caution." (Tr. 34, 457.) Because the ALJ found affirmative evidence of malingering in the medical record, he did not need to provide additional reasoning for rejecting Ms. Leach's testimony. *See Benton*, 331 F.3d at 1040–41 (requiring evidence of malingering *or* clear and convincing reasons).

In addition to noting the evidence of malingering, the ALJ also noted, citing to pertinent medical records, that he discredited Ms. Leach's credibility because 1) the objective medical evidence did not support the extent of her limitations, 2) the treatment notes of the record contradicted her assertions that she was chronically depressed and anxious, and 3) her inconsistent reporting with regard to substance abuse indicated that she was not a reliable witness. (Tr. 31, 33–34.) These justifications, while not necessary

due to his finding of malingering, provide additional support for his credibility determination.

The objective medical evidence indicated that MRI and CT scans of the brain repeatedly showed no abnormalities, and the claimant's treatment records indicate that her EEGs with Nurse Practitioner Sullivan were all normal. (Tr. 31–32.) This medical evidence is at odds with the claimant's accounts of repeated seizures, and the ALJ did not err in noting this. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Likewise, the treatment records contested the claimant's testimony that she "experienced panic attacks once or twice a day, heard voices, and was out for the rest of the day after a panic attack." (Tr. 31. 66–71.) Treatment records do support Ms. Leach's assertions that she does struggle with mental health, but examination notes do not support the constant debilitation she described at the hearing. The ALJ cited to a multitude of treatment notes reporting normal mood and affect, appropriate to the situation. (Tr. 33, 368, 371, 375, 378, 381, 384, 387, 394.) Ms. Leach herself indicated that her medication was helping her to cope with daily stressors, and that her mood was stable. (Tr. 33, 545.) Therefore, the ALJ's reliance on Ms. Leach's development and improvement throughout her treatment does not appear to be the result of cherry picking from an otherwise consistent record of debilitating symptoms. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (warning against improper cherry-picking from the record and advising ALJs to consider the record as a whole). The ALJ did not err in considering the inconsistencies between Ms. Leach's treatment notes and her testimony regarding her limitations. *See Cadena v. Astrue*, 365 F. App'x 777, 780 (9th Cir. 2010) (finding that the ALJ did not err by discrediting the claimant's testimony due to its inconsistency with the treatment records).

The ALJ also noted Ms. Leach's "inconsistent reporting with regard to substance abuse" as a final justification for discrediting her testimony. (Tr. 33.) In doing so, the ALJ noted that Ms. Leach told several providers very different information. (*Id.*) Ms. Leach told Dr. Mather that she stopped using drugs in 2003. (Tr. 33, 447.) Yet she told her providers at Mohave Mental Health Clinic that she had abstained from meth for just 1.5 years in 2013. (Tr. 33–34, 421.) Considering a claimant's inconsistencies in reporting substance abuse during the credibility analysis is not error. *See Thomas*, 278 F.3d at 959 (permitting the ALJ to consider the claimant's lack of candor regarding his alcohol use when analyzing credibility). Furthermore, to the extent that Ms. Leach raises objections to these justifications, evidence of malingering is a sufficient basis to discredit Ms. Leach, and thus even if this Court determined that the ALJ erred in considering these justifications—which it does not—such error would be harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." (quoting *Batson*, 359 F.3d 1197)). The ALJ's credibility determination is affirmed.

### D. RFC and Vocational Expert Testimony

Ms. Leach contends that the ALJ erred by failing to provide a narrative discussion to support his RFC finding. (Doc. 13 at 21–22.) An ALJ is required to provide an RFC assessment that includes a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996), *available at* 1996 WL 374184. He must also "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis" and "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

The ALJ properly "provided a narrative description of how the evidence supports each conclusion in the residual functional capacity assessment and explained any inconsistencies or ambiguities in the evidence," and thus his findings are affirmed. *Richie v. Colvin*, 564 F. App'x 336, 338–39 (9th Cir. 2014); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005–06 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). The ALJ provided a detailed summary of the objective medical evidence within the record, specifically noting that while "no single assessment was adopted," the ALJ "assessed specific restrictions on a function-by-function basis best supported by the medical evidence of record as a whole." (Tr. 37.) For example, the ALJ noted that Ms. Leach scored 25/30 on a mini-mental status exam administered by Dr. Geary. (Tr. 35.) The ALJ cited to specific exams that were administered by Dr. Geary that indicated that while Ms. Leach was limited in her processing speeds and her memory functioning, she was able to "respond correctly on 27 out of 30 Logical Memory Recognition items." (Tr. 35.) The ALJ's narrative explanation was then properly reflected in his RFC, which found that Ms. Leach limitations permitted her to "understand, remember, and carry out simple instructions and non-detailed tasks." (Tr. 30.)

In a similar vein, Ms. Leach objects to the ALJ's hypothetical to the vocational expert, alleging that the ALJ failed to accurately describe Ms. Leach's limitations. (Doc 13 at 25.) The ALJ found that Ms. Leach had moderate limitations in concentration, persistence, or pace. (Tr. 28.) In his hypothetical to the vocational expert, the ALJ articulated these limitations by describing a hypothetical claimant that was limited to "simple instructions and non-detailed tasks." (Tr. 75.)

"[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). The ALJ outlined the restrictions of the medical testimony in his opinion, noting that Ms. Leach's objective medical evidence indicated "relative intact

short-and long-term memorial functioning." (Tr. 35.) In so finding, the ALJ cited to her Immediate Memory Index and her Delayed Memory Index, which were at the bottom of the low average range and the top of the low average range respectively. (Tr. 35.) The ALJ also noted that Ms. Leach "was able to respond correctly on 27 of 30 Logical Memory Recognition Items" and scored 36 out of 40 on her Verbal Paired Associates Recognition score. (*Id.*) The ALJ went on to explain that "[t]hese values were well within normal limits." (Tr. 35.) However, Ms. Leach's IQ was placed at the top of the borderline range of intelligence classification. (*Id.*)

While summarizing the medical testimony, the ALJ made it clear that he did not endorse or accept Dr. Geary's opinion because there was evidence that Ms. Leach was a malingerer. (Tr. 35–36.) As discussed above, this was properly done. Therefore, the ALJ was not required to include the limitations as described by Dr. Geary. Rather, the ALJ was required to "adequately capture[] restrictions related to concentration, persistence, or pace" in the hypothetical. The ALJ cited to medical evidence that indicated Ms. Leach did indeed have some limitations in her memory and IQ level, but that she was apparently capable of performing during both these exams and the hearing, and her testing levels indicated that she was largely centered on the top of the borderline range. (Tr. 35.) Given this information, limiting Ms. Leach to "simple instructions and non-detailed tasks" adequately captured her limitations in concentration, persistence, and pace. *See also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) ("[T]he ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [the claimant's] deficiencies in concentration, persistence or pace."). The ALJ's findings are affirmed.

## CONCLUSION

For the foregoing reasons, the Court determines that the ALJ's opinion remains supported by substantial evidence despite Ms. Leach's objections.

/ / /

/ / /

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly.

Dated this 16th day of August, 2017.

_____
Honorable G. Murray Snow
United States District Judge